Morning, Your Honors. You may proceed. Dennis Reardon for Petitioner Lam, but speaking on behalf of all three petitioners. The central issues in this 2254 appeal are obviously of great consequence. The three habeas petitioners now before the Court were quite young at the time of the charge of defense. My client was then 17 years old. Each of these three defendants clearly was guilty of criminal conduct, and they paid a heavy price for it, having spent over 10 years in prison to date. The question is whether they were fairly convicted of first-degree murder, carrying life sentences based on a homicide that they did not commit or intend to be committed. The State concedes, and the State court found that the petitioner's trial was marred by Arlen error. That is, an instruction that permitted the jury to convict of murder based on an impermissible felony murder theory, obviating the need for a finding of the necessary elements of malice or forethought. While agreeing as it must that Arlen error was committed, the State attempts to argue that that does not necessarily establish Federal constitutional error. That's simply wrong for three reasons. One, this Court has long ago held that Arlen error is Federal constitutional error in the Senega case. Secondly, the California Supreme Court in the Chun case, which I cite at page 1 and 5 of my reply brief, has held that Arlen error is Federal constitutional error. And, in fact, the State appellate court found that it was Federal constitutional error because it applied the Chapman test. So this is not a case that in any way involves a claim that the State courts violated clearly established Federal law. In fact, the State courts, in finding constitutional error, followed, in fact, clearly established Federal law. So this is only a question about prejudice. And on this case, we have authority, recent authority of this Court that settles the question of prejudice in several respects. The State argues that the State court correctly used the Boyd-Estell test to determine that the error was not prejudicial and that this Court is bound to give deference to that finding of an absence of prejudice. In fact, in fact, in the recent case of Dixon v. Williams, this Court held that the Boyd-Estell test has no role in determining prejudice under BRAC. That applies to ambiguous instructions, not ones as here that are erroneous on their face. And secondly, they held that in all cases, once you get to the BRAC analysis, it's de novo review by the Federal courts. But that means that we have to look to see whether this actually would have influenced the jury. Yes, Your Honor. It would be the same as if you had Federal constitutional error in a direct Federal appeal. This Court would then be using – I'm sorry. You had error in a direct Federal appeal. You'd be applying the BRAC-Cadillacos test. Was the error substantial and did it have an substantial and injurious effect with any tie going to the defendant under Supreme Court law? And in that respect, I think one thing that's important is that the issue isn't whether, absent the error, the defendant would have been convicted. Under the BRAC test, the issue is did the error influence the jury. So if we knew, if we had an explicit statement that it influenced the jury, it wouldn't matter that the Court was convinced that at a different trial there'd be a different result, because if they relied on the instruction under Cadillacos and BRAC, then it has had a substantial and injurious effect. There were other instructions that were correct. Is that correct? Well, there were standard instructions on premeditated – well, on murder and malice of forethought, but as the Supreme Court has said, the giving of correct instructions along with incorrect instructions merely means that you have a correct theory of liability and an alternative incorrect theory of liability, and in that situation, the Court has to be – Well, it wasn't really like that. They didn't say either or. This was a – wasn't this a – this was really an out-of-place instruction. Yeah. Yeah. Well, it was a situation in which the Court says you have to find this under malice of forethought instructions, and then gives an instruction that says you don't have to find this. And, you know, it's never the twain shall meet. They're directly inconsistent. And in that situation, what the Supreme Court has said is that unless you can either determine that they did not rely on the incorrect instruction, or unless the instruction somehow clarified the conflict, the instructional conflict, absent one of those two things, then you have to reverse. And can I just make a reference to an earlier argument in this case? Several of the judges, several of the members of this panel said in an earlier case, look, we can't get into what jurors are thinking. We – the respect to the jury system means that in every case, we don't go in and inquire of jurors afterwards whether they correctly understood the instructions. The rules that we play by, reinforced by Federal Rule 606 and California Rule 1150 evidentiary rules, are that you don't inquire into mental processes. Those are off bounds. Well, if we're not going to go in and ask the jurors whether they got the instructions correctly, how do we do it? We apply a set of legal principles, and one of them is that jurors follow instructions. So the State is essentially – and the State court said, yes, the court gave an incorrect instruction, but we are going to speculate on the jurors' mental process and determine that they didn't rely on it. Is there any argument based on that instruction that was presented to the jury? No. And under Senega, and that's a principle that's never been refuted, if at the last minute the judge injects a theory of liability that hasn't been raised, the defense doesn't get a chance to counter it in closing argument. There is no discussion by adversary parties of why it might not apply in this case. So Senega said that that's more prejudicial than, perhaps, than if it's explicitly relied on. It certainly doesn't support a finding that the jury didn't rely on it. The rule of the Supreme Court is if the – and it's a rule that this jury was explicitly instructed on, is you ignore closing arguments when it comes to issues of law, you follow my instructions. And suffice it to say, and this morning was an example, the State very frequently enjoys the benefit of a rule that says we assume the jurors follow instructions. We can have cases where very prejudicial evidence comes in, and a court says consider that for a very limited purpose. We presume the jurors follow that instruction. The presumption here has to be that if the court gave this instruction, that the jury accepted it and relied on it. And the notion, the notion really, that the jurors could perceive this to be an orphan instruction, an outlier instruction, a mistaken instruction, where the trial judge himself was not capable of making that – of that recognition and making that judgment himself, I submit, is really preposterous, and it's inconsistent with our whole notion that jurors don't nullify. They're not supposed to nullify. They're supposed to follow the court's instructions in that regard. Sotomayor, who requested this instruction? Your Honor, the – the – well, I – these – the way that it goes in State court is that the – the government submits a standard set of instructions. There is no rule in State court that you need a express objection in order to preserve the error if it affects fundamental rights. It's different than – well, it's the equivalent of – of, in a sense, of the Federal plain error. I – I understand that. My question was different. Who submitted it? Which side? Which parties? How did you get here? I can't be sure of that, Your Honor. Well, I can be sure of that. The prosecution submitted this. The prosecution submitted the instructions defining the elements of the crime. I'll stand on that. This was not a defense instruction. This was not submitted by the defense. This was an instruction submitted by the prosecution. I readily concede that the record does not show the existence of an express objection to this section of the instruction by the defense. And so let's just talk for a second about Breck error. Was this a case in which the Court can say that there was no evidence upon which a jury could have relied – well, is the – does the record establish clearly, because this is really the prejudice test, that the jury did not rely on this instruction? If they relied on it, if they used it, then it's – it requires reversal irrespective of an assessment of the weight of the evidence. But the evidence in this case certainly was – was not particularly strong. There was evidence to support the notion that under California law, the killing itself was in imperfect self-defense. That can be an unreasonable belief by the – by the shooter in this case that his life is in danger. And secondly, there certainly was a basis on which the jury could say that they – the government had not proved beyond a reasonable doubt that this – that this homicide was a foreseeable and likely result of – of the agreement to commit an assault, which was the predicate offense of this reasonable foreseeability theory of vicarious liability. So for all of those reasons, Your Honor, we submit that under Breck and this Court's de novo review, habeas relief is in order in this case. When did this crime take place? When did it occur, Your Honor? I believe it's 2003. December of 2003, Your Honor. Thank you, counsel. Good morning, Your Honors. Kyle Gee appearing for Jimmy Cook. Mr. Cook has an additional hurdle as identified in the order of the granted Certificate of Appealability, and that is the procedural default question, because there's no doubt that the trial judge, when going through the instructions, when he came to Calcrim – Calgic 8.50, said the record will reflect that these defendants are requesting this instruction or the defense is requesting. And Mr. Cook's counsel was among the three who answered affirmatively. So I've got to say something on both firmly established and regularly followed in the context of the way in which this Court of Appeal in California resolved the error under what it called the Invited Error Rule. My first point, and I'll get back to this in just a second, is that the Invited Error Rule applied by this Court is not firmly established in California. There is an Invited Error Rule, but it's not the rule that was used in this case. Second, the Attorney General pleaded this rule as an affirmative defense. Over pages 67 to 71 of the opening brief, we cited cases in which California courts of appeal, when the record was silent as to why an instruction was requested, would not find invited error. There had to be something affirmative in the record to establish why the instruction wasn't requested. And so under Bennett v. Mueller, the burden is shifted back to the appellee, the Attorney General's office, to demonstrate that the rule applied in this case is regularly followed. Now, they did exactly that in Martin. They cited hundreds of habeas petitions that had been denied on timeliness grounds. So they know how to do it, but they have not cited any cases to support the idea that this Invited Error on a Silent Record Rule is regularly followed in California, and the fact is, it is not. The California Court of Appeals does not do that. I don't understand. You just told us how the attorney for Cook said that he did ask for the jury instruction. Correct. But that's not very silent. That's very open. Oh, no. And I've taken for granted that Cook asked for the jury instruction, and I've had difficulty with your case ever since. So could you clarify that for me? Well, the way the rule operates in California is, in these cases, all involved requested instructions. So the simple fact of requesting an instruction is not enough. The record has to affirmatively demonstrate that he had a tactical reason for requesting an instruction that contained erroneous language. Was this part of a package? You know, CalCrim itself is all part of a package. They were going through the instructions. They get to the – I'm sorry, CalJIC is all part of a package. They got to 8.50, and the judge says, I'm going to give that without the felony murder language, the problem language. And then they get to 8.51, which is a really long instruction that's got the problem language in one sentence. And the defense is requesting 8.51, yes. The question is whether that establishes affirmatively that he had a tactical basis for wanting the felony murder language to be heard by the jury. And this record is silent. The request itself is not enough. The tactical reason has to be evident. But the only person who knows the tactical reason is the person who asked for it. If the person doesn't mention it, how can you blame the Attorney General? It's not me, Your Honor. The California Supreme Court, at least 20 years before this trial, established that rule. The record has to affirmatively demonstrate that counsel acted for tactical reasons and not out of ignorance or mistake. That's their rule, not mine. That's the rule that the court of appeals should have been applying. That is the rule that's firmly established. But what the court of appeals said, because there was a plausible tactical reason for requesting the instruction, the error is invited. Now, a plausible tactical reason is, you know, positive, speculative. It's the kind of thing you do on a direct appeal when the claim is ineffective assistance. You say, could that lawyer have had a reasonable tactical reason for doing what he did or didn't do? You just sort of think maybes. Maybes don't count under the California rule. So the rule applied here, in my position, is was not firmly established, and the Attorney General has not met its burden of establishing that the rule is firmly established. Those are the two prongs of my position. Roberts. Thank you very much, counsel. Your Honor, as a reminder of personal privilege, can I confess error in my argument? Excuse me. You know, we don't allow people to speak from the table. If you wish to speak, you come up here, and if you're out of order, you have to ask permission of the court. Your Honor, I apologize, Judge Wallace. As a point of personal privilege, I'd like to confess error in my argument, Your Honor. It will just take me 30 seconds. It's the dangers of representing joint arguments. I said that the State had submitted this instruction. My client and Mr. Ditch did not request it. I am in error. The other defendants did. And I apologize to the Court for that. And I apologize for any violation of decorum, Judge Wallace. Thank you, counsel. Good morning, Your Honors. David Andrew Aldrich, Deputy Attorney General for Respondent. As to the procedural default question, I will direct the Court to page 32 of Respondent Apelli's brief, which points out that the question whether or not the standards for application of a State rule is itself a question of State law, and the State Court found it was met. Moreover, one of the cases the Court cited was People v. Hardy. This is still at page 32, which noted merely that counsel, quote, presumably had a tactical reason. So the idea that there must be something affirmative that excludes the presumptions that counsel knows what he's doing is both incorrect as a de novo matter, but this Court does not also pass on the correctness as a de novo matter. As to the merits, I'm almost at a loss to figure out where to start in addition to what's said in the brief. I think I will start with Dixon. Dixon, to understand Dixon, you have to know what happened in State court in Dixon. And in the State court in Dixon, the State court found that there was constitutional error. So Dixon did not purport to apply AEDPA to the question of determining error in the first instance. Dixon had a State court which had found error. Dixon itself made a de novo determination of error. And so we have nothing that advises us under Dixon that a State court could not have applied the Boyd-Stell test to this case. The Dixon court also cited Ho v. Carey, although when it revised its opinion, it made that a C-site, which makes perfect sense because the Ho case actually predated Middleton v. McNeil and certainly predated Richter. So Ho did not make out any AEDPA analysis that we should recognize today. And Ho obviously could not have applied the rule from Middleton v. McNeil, which is that you do indeed take meaning from the arguments of counsel, especially when the argument of the prosecutor concedes a point in favor of the defendant. Here, the prosecutor unmistakably conceded, I have to show malice in order to get to murder. That was unanimous in the arguments of counsel. So the idea that the State court couldn't have taken meaning from that would define Middleton as a de novo matter, and certainly there's no showing that no fair-minded jurist could have found that to be the meaning of Middleton. There also was no logical path to a murder conviction on a felony murder theory. We do trust jurors to be able to analyze the evidence. And there simply was no evidence of an offense which was inherently dangerous to human life. As we pointed out in the brief, the only but the most dangerous felony was assault by means likely to cause great bodily injury, and great bodily injury simply does not imply danger to human life. So even if there had been a direct instruction saying, you may convict of murder if you find that he committed an assault that caused danger to human life, there was not. Let me ask you, counsel, was there, this is a question we had for Mr. Reardon as well, was there any argument by either the prosecution or the defense as to the, I think we all agree, was the erroneous part of the jury instruction. Did the prosecutor ever point to that and say, ladies and gentlemen, you may convict based on what the judge told you right here? No. This is a short answer. In fact, all argument was to the contrary because all argument was that malice was required. I don't want to get nitpicky, but it is one thing to say that an instruction is erroneous. It's another to say that an instruction, whether or not correct in law, was erroneously given. The state court definitely found it was error to give this instruction. It is an instruction which in the abstract is correct, but it would need some clarification. The thing is under California, California prides itself on being more protective than the Constitution. So while as a constitutional matter it's not enough that an instruction is ambiguous, it will be error under state law to give an ambiguous instruction. So while an ambiguous instruction requires an analysis under Estelle and Boyd, in California it's error to give an instruction that even requires that analysis. So this instruction did because it did inject, it certainly had the potential for injecting confusion. The argument that has been repeatedly stated that whenever someone says Ireland, they mean constitutional error, simply has no foundation. It's certainly possible to commit a constitutional violation that also violates Ireland, but that does not imply that every time you violate Ireland, you have violated the Constitution. Nothing in the state court opinion indicated otherwise. Moreover, even harder than getting to murder through the felony murder theory on this evidence, there simply was no legal path to first-degree murder, which is what the convictions were. The only path to first-degree murder was premeditation and deliberation. That's the only foundation. The only way the jurors were given was that page 98 of the excerpt of record filed by Appellant D. The only way to get to first-degree murder, if somehow you got to murder improperly, which you couldn't, was to find premeditated, deliberated, willful intent to kill. Am I correct that there were lesser included? There were. And also self-defense instruction. I believe that was given. And the lesser included went through to explain if you don't find this, then you may find that they were guilty of manslaughter or something. Yes. So that it sort of went down the line. And the felony murder instruction, was that – did that include the elements of felony murder? Did it say if you find this, this, then you find murder? The instruction given here simply stated that killing is murder if this – if you – if it's committed in the course of a felony, dangerous to human life. It didn't – it didn't say really anything else. The State court called it an orphan charge, which – Where did it come from in the lexicon of general instructions, uniform instructions? It was – well, simply it was erroneously given. I know, but are there pattern jury instructions or uniform jury instructions? This is – this is the entire Calgic set of instructions is all these kinds of instructions that could be given for all cases. The – that is normal. Is this a separate instruction within Calgic? This felony murder? Yes, I believe it is. It's – it has its own heading or something, but – which I think it's normally not read to the jury. But it has its own page, I think. And the language that's here has its own page and its own number in Calgic? I believe so, but I cannot say for certain. But, again, back to first degree, which is, again, what they were convicted of. There's no path to it. There is literally none. There is no way to get to first degree murder without finding premeditation and deliberation and a willful killing, which is malice. So I simply don't see the basis for an argument of prejudice, even had there been a way under AEDPA to avoid the fact that we don't have constitutional error in itself. I don't have any affirmative judgment. Did the judge read the instructions to the jury? Yes. And he read this one? Yes. Unless you have anything further, counsel? Thank you, Your Honor. Thank you. The matter is submitted.
judges: WALLACE, SCHROEDER, OWENS